1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    UNITED STATES OF AMERICA,              No.  1:17-cr-00158-DAD-BAM-1

12                Plaintiff,

13         v.                                ORDER DENYING DEFENDANT
                                             HARDIN'S MOTION FOR MODIFICATION
14    DUSTIN HARDIN,                         OF SENTENCE UNDER 18 U.S.C §
                                             3582(c)(1)(A)
15                Defendant.
                                             (Doc. No. 61)
16

17          Pending before the court is a motion for a reduction of sentence pursuant to 18 U.S.C.

18    § 3582(c)(1)(A) brought on behalf of defendant Dustin Hardin.  (Doc. No. 61.)  That motion is

19    based in part on the purported risks allegedly posed to defendant Hardin by the ongoing

20    coronavirus ("COVID-19") pandemic.  For the reasons explained below, defendant's motion will

21    be denied.

22                                   **BACKGROUND**

23          On June 22, 2017, an indictment was returned charging defendant Hardin with one count

24    of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1).

25    (Doc. No. 1.)  On March 11, 2019, defendant entered a plea of guilty to this single count.  (Doc.

26    No. 34.)  On October 15, 2019, the court sentenced defendant to 90 months imprisonment in the

27    custody of the U.S. Bureau of Prisons ("BOP"), to be followed by a 36-month term of supervised

28    release.  (Doc. No. 51.)  The court also imposed the mandatory $100 special assessment.  (*Id.*)

1

1    Defendant is currently serving his sentence at Florence High USP in Colorado.[1]  (Doc.

2   No. 65 at 3.)  Accounting for the award of good time credits and time served prior to sentencing

3   while detained, defendant Hardin has served approximately 46.5% of the statutory term imposed

4   and has a current projected release date of July 20, 2024.  (Doc. No. 65-1.)

5    On February 12, 2021, defendant filed the pending motion for compassionate release

6   pursuant to 18 U.S.C. § 3582(c)(1)(A).  (Doc. No. 61.)  On March 5, 2021, the government filed

7   its opposition to the motion.  (Doc. No. 65.)  To date, defendant has not filed a reply and the time

8   to do so has now passed.

9                                      **LEGAL STANDARD**

10    A court generally "may not modify a term of imprisonment once it has been imposed."

11   18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment

12   of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may

13   not be modified by a district court except in limited circumstances.").  Those limited

14   circumstances include compassionate release in extraordinary cases.  *See United States v. Holden*,

15   452 F. Supp. 3d 964, 968 (D. Or. 2020).  Prior to the enactment of the First Step Act of 2018

16   ("the FSA"), motions for compassionate release could only be filed by the BOP.  18 U.S.C.

17   § 3582(c)(1)(A) (2002).  Under the FSA, however, imprisoned defendants may now bring their

18   own motions for compassionate release in the district court.  18 U.S.C. § 3582(c)(1)(A) (2018).

19   In this regard, the FSA specifically provides that a court may

20            upon motion of the defendant after the defendant has fully exhausted
            all administrative rights to appeal a failure of the [BOP] to bring a
21            motion on the defendant's behalf[2] or the lapse of 30 days from the

22   _____

    [1]  The court has confirmed that defendant Hardin is serving his sentence at Florence High USP
23   and not Florence FCI by using the BOP's prisoner locator system.

24   [2]  If the BOP denies a defendant's request within 30 days of receipt of such a request, the
    defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the
25   date the Warden signed the response."  28 C.F.R. § 542.15(a).  If the regional director denies a
    defendant's administrative appeal, the defendant must appeal again to the BOP's "General
26   Counsel within 30 calendar days of the date the Regional Director signed."  *Id.*  "Appeal to the
    General Counsel is the final administrative appeal."  *Id.*  When the final administrative appeal is
27   resolved, a defendant has "fully exhausted all administrative rights."  *See* 18 U.S.C.
28   § 3582(c)(1)(A).

receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –

    (i)      extraordinary and compelling reasons warrant such a reduction; or

    (ii)     the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[3]

/////

---

[3] Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, Law360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, Law360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

1    The applicable policy statement with respect to compassionate release in the U.S.

2  Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and

3  compelling reasons." U.S. Sent'g Guidelines Manual ("U.S.S.G.") § 1B1.13 (U.S. Sent'g

4  Comm'n 2018)[4]; *see also United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1197 (E.D. Wash.

5  2020) (noting that many courts have relied on U.S.S.G. § 1B1.13 to define "extraordinary and

6  compelling reasons," even though that policy statement was issued before Congress passed the

7  FSA and authorized defendants to file compassionate release motions). However, all the circuit

8  courts to have more recently considered the issue, and a growing majority of district courts across

9  the country, have concluded that because, among other reasons, the Sentencing Commission has

10  not amended the Guidelines since the enactment of the FSA, federal courts are not limited by the

11  pre-FSA categories described in U.S.S.G. § 1B1.13 in assessing whether extraordinary and

12  compelling circumstances are presented justifying a reduction of sentence under 18 U.S.C.

13  § 3582(c). *See, e.g.*, *United States v. Brooker (Zullo)*, 976 F.3d 228, 237 (2d Cir. 2020) ("[T]he

14  First Step Act freed district courts to consider the full slate of extraordinary and compelling

15  reasons that an imprisoned person might bring before them in motions for compassionate release.

16  Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline §

17  1B1.13, limits the district court's discretion); *United States v. Jones*, 980 F.3d 1098, 1111 (6th

18  Cir. 2020) ("In cases where incarcerated persons file motions for compassionate release, federal

19  judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define

20  'extraordinary and compelling' without consulting the policy statement § 1B1.13."); *United*

21  *States v. Gunn*, 980 F.3d 1178, 1181 (7th Cir. 2020) (("[T]he Guidelines Manual lacks an

22  'applicable' policy statement covering prisoner-initiated applications for compassionate release.

23  District judges must operate under the statutory criteria—'extraordinary and compelling

24  reasons'—subject to deferential appellate review."); *United States v. McCoy*, 981 F.3d 271, 284

25  (4th Cir. 2020) ( "In short, we agree with the Second Circuit and the emerging consensus in the

26

27  [4] The Sentencing Guidelines also require that to be granted a reduction of sentence under 18
   U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person
28  or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

1    district courts:  There is as of now no 'applicable' policy statement governing compassionate-

2    release motions filed by defendants under the recently amended § 3582(c)(1)(A), and as a result,

3    district courts are 'empowered . . . to consider any extraordinary and compelling reason for

4    release that a defendant might raise.'") (citation omitted); *United States v. Maumau*, __ F.3d __,

5    2021 WL 1217855, at *12 (10h Cir. Apr. 1, 2021) ("We therefore agree with the district court that

6    under the second part of § 3582(c)(1)(A)'s test, its finding that extraordinary and compelling

7    reasons warranted a reduction in Maumau's case was not constrained by the Sentencing

8    Commission's existing policy statement, U.S.S.G. § 1B1.13."); *see also United States v. Parker*,

9    461 F. Supp. 3d 966, 979 (C.D. Cal. 2020) (collecting cases); *United States v. Rodriguez*, 424 F.

10   Supp. 3d 674, 681 (N.D. Cal. 2019).

11          In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the

12   defendant bore the initial burden of demonstrating that a sentence reduction was warranted.  *See*

13   *United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998).  Although the Ninth Circuit

14   has not specifically addressed the question of which party bears the burden in the context of a

15   motion for compassionate release brought pursuant to § 3582(c) as amended by the FSA, district

16   courts to have done so agree that the burden remains with the defendant.  *See, e.g.*, *United States*

17   *v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, *1 (C.D. Cal. Jan. 31, 2020); *United*

18   *States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, *3 (W.D. Wash. May 7, 2020).

19                                          **ANALYSIS**

20          As district courts have summarized, in analyzing whether a defendant is entitled to

21   compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a

22   defendant has satisfied three requirements:

23              First, as a threshold matter, the statute requires defendants to exhaust
                administrative remedies.  18 U.S.C. § 3582(c)(1)(A).  Second, a
24              district court may grant compassionate release only if "extraordinary
                and compelling reasons warrant such a reduction" and "that such
25              reduction is consistent with applicable policy statements issued by
                the Sentencing Commission.  *Id*.  Third, the district court must also
26              consider "the factors set forth in Section 3553(a) to the extent that
                they are applicable."  *Id*.
27

28   *Rodriguez*, 424 F. Supp. 3d at 680; *see also United States v. Ramirez-Suarez*, No. 16-cr-00124-

                                               5

LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 461 F. Supp. 3d at 970;

*United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9,

2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be

"consistent with" the sentencing factors set forth in § 3553(a)).

**A.      Administrative Exhaustion**

Defendant asserts, and the government does not dispute, that defendant has exhausted his

administrative remedies prior to filing his pending § 3582 motion.  (Doc. Nos. 61 at 3–4; 65 at 3.)

Because failure to exhaust is normally viewed as an affirmative defense, which must be pled and

proven, the court will accept the government's concession and turn to the merits of defendant's

motion.

**B.      Extraordinary and Compelling Reasons**

According to the Sentencing Commission's policy statement, "extraordinary and

compelling reasons" warranting compassionate release may exist based on a defendant's medical

conditions, age and other related factors, family circumstances, or "other reasons."  U.S.S.G.

§ 1B1.13, cmt. n.1 (A)–(D).  As addressed above, even though the catch-all of "other reasons"

was included in the policy statement at a time when only the BOP could bring a compassionate

release motion, courts have agreed that it may be relied upon by defendants bringing their own

motions for reductions in their sentence under the FSA.  *See, e.g.*, *United States v. Kesoyan*, No.

2:15-cr-00236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases.)

The medical condition of a defendant may warrant the granting of compassionate release

by the court where the defendant "is suffering from a terminal illness (i.e., a serious and advanced

illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a

probability of death within a specific time period) is not required."  U.S.S.G. § 1B1.13, cmt.

n.1(A)(i).  Non-exhaustive examples of terminal illnesses that may warrant a compassionate

release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage

organ disease, and advanced dementia."  *Id*.  In addition to terminal illnesses, a defendant's

debilitating physical or mental condition may warrant compassionate release, including when:

/////

6

1

The defendant is

2
(I)   suffering from a serious physical or medical condition,

3
(II)  suffering from a serious functional or cognitive impairment, or

4
(III) experiencing deteriorating physical or mental health because of
the aging process,

5

6
that substantially diminishes the ability of the defendant to provide
self-care within the environment of a correctional facility and from
which he or she is not expected to recover.

7

8   *Id*. at cmt. n.1(A)(ii).  Where a defendant has moderate medical issues that otherwise might not be

9   sufficient to warrant compassionate release under ordinary circumstances, many courts have

10  concluded that the risks posed by COVID-19 may tip the scale in favor of release when the

11  particular circumstances of a case are considered in their totality.  *See, e.g.*, *Parker*, 461 F. Supp.

12  3d at 980 ("Since the onset of the COVID-19 pandemic, courts have determined that inmates

13  suffering from conditions such as hypertension and diabetes are now at an even greater risk of

14  deteriorating health, presenting 'extraordinary and compelling' circumstances that may justify

15  compassionate release.") (collecting cases); *United States v. Rodriguez*, 451 F. Supp. 3d 392, 405

16  (E.D. Pa. 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr.

17  Rodriguez's health problems, proximity to his release date, and rehabilitation would not present

18  extraordinary and compelling reasons to reduce his sentence.  But taken together, they warrant

19  reducing his sentence.").

20          Compassionate release may also be warranted based on a defendant's age and other

21  related factors. [5]  Thus, "extraordinary and compelling reasons" exist where a "defendant (i) is at

22  least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because

23  of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of

24  imprisonment, whichever is less."  U.S.S.G. § 1B1.13, cmt. n.1(B).

25          Defendant argues that extraordinary and compelling reasons warranting reduction of his

26  custodial sentence exist because of his medical vulnerability and risk associated with COVID-19,

27

28  [5]  Here, however, because defendant Hardin is only 35 years old (Doc. No. 69—sealed), his age
and age-related factors do not play a role in consideration of his pending motion.

1    specifically the fact that he suffers from hypertension, obesity, and Hepatitis C.  (Doc. No. 61 at.

2    4.)  Defendant asserts that according to his medical records he has a Body Mass Index of 35.7,

3    which falls within the obese range according to the U.S. Centers for Disease Control and

4    Prevention ("CDC") guidelines.  (*Id*. at 9–10.)  Defendant also points out that Hepatitis C is a

5    liver disease that increases his risk of suffering a severe illness were he to contract COVID-19

6    according to the CDC.  (*Id*.)  Defendant argues that he is particularly vulnerable to COVID-19

7    because the CDC "explicitly lists hypertension, being overweight, and liver disease as risk factors

8    for severe illness from COVID-19."  (*Id*. at 9) (citing *People with Certain Medical Conditions*,

9    Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-

10   extra-precautions/people-with-medical-conditions.html (last updated March 15, 2021)).

11           According to defendant, any one of his medical conditions would qualify as an

12   extraordinary and compelling reason justifying his compassionate release, but he argues the court

13   should take particular note of his case because the combination of his three health issues has left

14   him "very vulnerable to serious illness (or worse) from COVID-19."  (Doc. No. 61 at 10–11)

15   (collecting cases).  Defendant Hardin also asserts that there are new variants of COVID-19 that

16   spread more easily and quickly and that "[c]onditions of imprisonment create the ideal

17   environment for the transmission of contagious diseases."  (*Id*. at 7–8.)  According to the

18   defendant, "[c]rowding, inadequate ventilation, and security issues all contribute to the spread of

19   infectious disease in jails and prisons."  (*Id*. at 8.)  Moreover, defendant argues that according to

20   the BOP website, there were 8 inmates with positive results for COVID-19 at Florence High USP

21   and 1 staff member with a positive result at the time of his filing of the pending motion for

22   compassionate release.  (*Id*.)  Finally, defendant contends that he has been having difficulty

23   obtaining the appropriate medical care while in custody because he "has not been receiving the

24   appropriate medication for his hypertension and Hepatitis C."  (*Id*. at 15.)

25           In its opposition to the pending motion, the government argues that the mere existence of

26   COVID-19 in society or in the correctional institution where defendant Hardin is imprisoned is

27   not an extraordinary and compelling reason justifying the granting of the requested relief, and that

28   defendant's health profile does not match the CDC's criteria for those it identifies as being at an

increased risk for severe complications from COVID-19.  (Doc. No. 65 at 6.)  Although the

government does not dispute that defendant suffers from primary hypertension and Hepatitis C,

the government contends that only those suffering from *pulmonary* hypertension are at a higher

risk while those who suffer from primary hypertension only *might* be at a higher risk were they to

contract the virus.  (*Id*. at 7 n.4.)  Nevertheless, the government argues that defendant's medical

conditions have been monitored and treated throughout his imprisonment.  (*Id*. at 8.)  The

government also contends that although defendant claims to have not received his medication for

hypertension, defendant had only recently re-requested that medication because in the past he had

refused to take it.  (*Id*.)  Accordingly, the government argues that defendant fails to satisfy the

condition that he present a medical condition that substantially diminishes his ability to provide

self-care within the correctional facility.  (*Id*.)  Similarly, although the government concedes that

defendant is obese it argues that the defendant "does not claim that his obesity has caused any

other medical issues, nor has he demonstrated that his health conditions are not well controlled by

the treatment he is receiving . . .."  (*Id*. at 9.)  Finally, the government does inform the court that

there were 119 inmates and 27 staff confirmed positive for COVID-19 at Florence High USP as

of the date it filed its opposition to the pending motion.  (*Id*. at 4.)

The court notes that defendant's BOP medical records reflect that his last reported weight

on March 17, 2020 was 218 pounds and his height was 66.5 inches, which results in a BMI of

35.7.  (Doc. No. 69—sealed at 137.)  It is undisputed that, according to the CDC, adults with a

BMI of 30 or higher, adults who suffer from hypertension or high blood pressure, and adults who

have liver disease are all at an increased risk of suffering a severe illness from the virus that

causes COVID-19.  *See People with Certain Medical Conditions*, Centers for Disease Control and

Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-

medical-conditions.html (last updated March 29, 2021)).  Thus, defendant has shown that because

he suffers from these medical conditions, he is at an increased risk of suffering severe illness if he

were to be infected with COVID-19.

However, defendant Hardin has not shown that Florence High USP is presently unable to

monitor and adequately treat his medical conditions.  *See United States v. Ayon-Nunez*, No. 1:16-

1    cr-00130-DAD, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020) ("Chronic conditions that can

2    be managed in prison are not a sufficient basis for compassionate release.") (internal quotation

3    marks and citation omitted); *see also United States v. McCollough*, No. 15-cr-00336-001-PHX-

4    DLR, 2020 WL 2812841, at *2 (D. Ariz. May 29, 2020) (relevant questions include the adequacy

5    of the care and treatment being provided to the defendant in BOP given his pre-existing

6    conditions and concluding there was no evidence that the circumstances surrounding his health or

7    treatment were extraordinary or compelling.).  Notably, defendant Hardin has not disputed the

8    government's assertion that his medical conditions are well controlled and treated at Florence

9    High USP.  Indeed, defendant's medical records reflect that he has received regular attention

10   from medical staff for his Hepatitis C and hypertension.  (Doc. No. 69—sealed.)  The court is also

11   not persuaded that defendant's conclusory assertion that he is unable to receive the appropriate

12   medications rises to the level of an extraordinary and compelling reason supporting his

13   compassionate release.  Specifically, there has been no showing here that defendant Hardin is

14   being denied necessary medical treatment or prescriptions or that necessary treatment of his

15   conditions is being delayed in any way.  *See Ayon-Nunez*, 2020 WL 704785, at *3; *see also*

16   *McCollough*, 2020 WL 2812841, at *2.  It is true, as one court has acknowledged, that "the

17   presence of COVID 19 . . . necessitates a more expansive interpretation of what self-care means"

18   and thus the inability of individuals at high risk of becoming severely ill from COVID-19 to

19   practice appropriate hygiene, wear a mask and maintain social distancing may constitute an

20   inability to provide self-care under some circumstances.  *United States v. Gorai*, No. 2:18-cr-

21   00220-JCM, 2020 WL 1975372, at *3 (D. Nev. Apr. 24, 2020) (citation omitted).  Here, however,

22   defendant Hardin has not persuasively argued that he is being prohibited from taking appropriate

23   precautions to avoid contracting COVID-19 or that his ability to provide self-care at Florence

24   High USP is currently substantially diminished.  Rather, in his pending motion, defendant merely

25   asserts in conclusory fashion that, in general, crowding and security measures contribute to the

26   spread of infectious disease in prison facilities.  (Doc. No. 61 at 8.)  But defendant Hardin has not

27   made any specific allegations regarding, for instance, his lack of access to protective gear or

28   cleaning and sanitizing supplies, or as to his lack of ability to social distance at Florence High

10

1   USP.  He simply has not presented any evidence regarding the conditions that he is currently

2   facing at Florence High USP, or the ways in which those conditions render him unable to provide

3   self-care.  In short, the court is not persuaded that the higher risk of severe illness were he to

4   contract COVID-19 that defendant faces, based on his medical conditions, rises to the level of an

5   extraordinary and compelling reason supporting compassionate release given the adequate

6   medical treatment he is receiving.

7       Importantly for purposes of resolving the pending motion, as of the date of this order on

8   April 5, 2021, the BOP is reporting that 9 inmates and 28 staff members have positive tests for

9   COVID-19 at Florence High USP and that two inmates have died from the virus at that prison.

10  *See* Federal Bureau of Prisons, COVID-19 Coronavirus, available at

11  https://www.bop.gov/coronavirus/ (last visited Apr. 5, 2021).[6]  While still quite serious, it thus

12  appears that the number of positive cases of the virus has steadily declined at Florence High USP

13  where defendant is imprisoned during the pendency of this motion.  In this vein, it appears that

14  prison is now adequately managing the outbreak of COVID-19 after encountering a quite high

15  infection rate back in March of this year.

16      Accordingly, the court concludes that defendant Hardin has not demonstrated that his

17  medical conditions, even in combination with the COVID-19 related conditions at Florence High

18  USP, support a finding that his ability to provide self-care within the prison setting has been

19  substantially diminished at this time.  Thus, defendant has not shown extraordinary and

20  compelling reasons exist that warrant a reduction of his sentence under § 3582(c)(1)(A).

21  Therefore, his motion will be denied.

22  **C.      Consistency With the § 3553(a) Factors**

23      Finally, even if defendant Hardin's motion were supported by a showing of extraordinary

24  and compelling reasons for his compassionate release, the undersigned is not persuaded that the

25  requested reduction in his sentence would be consistent with consideration of the sentencing

26

27  [6]  While the undersigned does not necessarily accept these reported numbers at face value in light
    of current CDC guidelines with respect to both testing and the manner of counting "active cases,"
28  there is also no evidence before the court challenging those reported numbers in this case.

1   factors set forth at 18 U.S.C. § 3553(a).[7] *See Parker*, 461 F. Supp. 3d at 979.

2   In the pending motion, defendant contends that the COVID-19 pandemic is an overriding

3   factor that warrants a reduction in his sentence because "the sentencing purpose of a just

4   punishment does not warrant a sentence that includes exposure to a life-threatening illness," and

5   "the Eight Amendment's prohibition on cruel and unusual punishment includes unreasonable

6   exposure to dangerous conditions in custody." (Doc. No. 61 at 13.)  Defendant also contends that

7   he has served 4 years of his 90-month sentence, which has served as a deterrent from criminal

8   activity. (*Id*. at 14.)  In addition, defendant asserts that he "is extremely concerned with

9   contracting COVID-19" and will therefore remain in his residence and focus on staying healthy if

10  he were to be released. (*Id*. at 15.)  Upon release, defendant states that he has a stable residence

11  with his sister "where he can abide by the terms of this court." (*Id*. at 14.)

12  The government counters that defendant Hardin is "a convicted felon 6 times over,

13  possessed a gun knowing that it was unlawful for him to do so, [and] his history and

14  characteristics speak volumes of the ongoing danger posed by his release." (Doc. No. 65 at 10.)

15  The government also argues that defendant "is a repeat offender who shows nothing but disregard

16  for living a law-abiding life, committing to substance abuse treatment and mental health

17  treatment, and obtaining and maintaining employment." (*Id*. at 10.)  Thus, the government argues

18  that because there is high likelihood of recidivism on his part, the court should deny

19  compassionate release to defendant Hardin. (*Id*. at 11.)  Lastly, the government contends that

20  defendant has already received the benefit of leniency in that the probation report recommended

21

22  [7] Title 18 U.S.C. § 3553(a) provides that, in determining the sentence to be imposed, the court
    shall consider:  the nature and circumstances of the offense and the history and characteristics of

23  the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote
    respect for the law, provide just punishment for the offense, afford adequate deterrence, protect

24  the public from further crimes of the defendant and provide the defendant with needed
    educational or vocational training, medical care, or other correctional treatment in the most

25  effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range
    established for the applicable category of offense committed by the applicable category of

26  defendant as set forth in the guidelines; any pertinent policy statement issued by the Sentencing
    Commission; the need to avoid unwarranted sentence disparities among defendants with similar

27  records who have been found guilty of similar conduct; and the need to provide restitution to any

28  victims of the offense.

12

1    that he receive a high end of the guideline sentence of 96 months imprisonment, but the court

2    imposed a lesser sentence of 90 months.  (*Id.*)  According to the government, if defendant were to

3    be released now, he will have served an "effective sentence of less than 4 years' imprisonment—a

4    sentence far below the Guideline range and with no significant mitigating facts supporting such a

5    drastic, unwarranted sentence reduction."  (*Id.*)

6        As noted above, defendant is currently serving a 90-month sentence following his entry of

7    plea to being a felon in possession of a firearm and ammunition in violation of 18 U.S.C.

8    § 922(g)(1).  (Doc. No. 51.)  With his early acceptance of responsibility, the U.S. Probation

9    Office determined that defendant's total offense level was 21 and his criminal history was VI,

10   resulting in an advisory sentencing range calling for a term of imprisonment of between 77 and

11   96 months.  (Doc. No. 39 at 4.)  The probation officer recommended a high-end of the guideline

12   range sentence of 96 months in BOP custody.  (*Id.*)  The undersigned instead sentenced defendant

13   to a 90-month term of imprisonment.

14       The court recognizes that defendant has an extensive criminal history involving drugs and

15   weapons.  (Doc. No. 39 at 7–16.)  Moreover, many of his past criminal convictions were

16   committed while he was on probation.  (*Id.*)  This history of criminal activity suggests both that

17   defendant may pose a danger to the safety of the community if he were to be released and that he

18   may also be likely to reoffend.  But even if the court were to credit defendant's current belief that

19   he will not reoffend (*see* Doc. No. 61 at 14–15), "'[t]he length of the sentence remaining is an

20   additional factor to consider in any compassionate release analysis,' with a longer remaining

21   sentence weighing against granting any such motion."  *United States v. Shayota*, No. 1:15-cr-

22   00264-LHK-1, 2020 WL 2733993, at *6 (N.D. Cal. May 26, 2020) (quoting *United States v.*

23   *Connell*, No. 18-cr-00281-RS, 2020 WL 2315858, at *6 (N.D. Cal. May 8, 2020)); *see also*

24   *United States v. Lonich*, No. 1:14-cr-00139-SI-1, 2020 WL 2614874, at *3 (N.D. Cal. May 21,

25   2020) (denying motions for compassionate release, noting, "the Court finds it significant that

26   defendants have served far less than half of their sentences").  Here, as of the date of this order,

27   defendant Hardin has served less than 50% of the 90-month sentence imposed, even with

28   maximum good time credits applied.  (*See* Doc. No. 65-1 at 4.)  In the court's view, a reduction of

13

1  defendant's 90-month sentence to effectively one of less than four years would not adequately

2  reflect the seriousness of his offense of conviction, promote respect for the law, provide just

3  punishment, or afford adequate deterrence to criminal conduct.[8]  *See United States v. Purry*, No.

4  2:14-cr-00332-JAD-VCF, 2020 WL 2773477, at *2 (D. Nev. May 28, 2020); *Shayota*, 2020 WL

5  2733993 at *5; 18 U.S.C. § 3553(a).

6      Thus, on balance, the court finds that granting defendant's motion and reducing his

7  sentence to one of time served would not be consistent with the appropriate consideration of the

8  § 3553(a) sentencing factors.

9                              **CONCLUSION**

10     Because defendant Hardin has failed to demonstrate that "extraordinary and compelling"

11  reasons exist justifying a reduction of his sentence under 18 U.S.C. § 3582 (c)(1)(A) or that such

12  a reduction at this time would be consistent with the sentencing factors set forth in 18 U.S.C.

13  § 3553(a), his motion for compassionate release (Doc. No. 61) is denied.

14  IT IS SO ORDERED.

15   Dated:   **April 5, 2021**

16                                    UNITED STATES DISTRICT JUDGE

17

18  _____

8  In the pending motion, defendant also appears to ask the court to release him on home
19  confinement.  (*See* Doc. No. 61 at 13.)  However, the CARES Act "'authorizes the BOP—not
courts—to expand the use of home confinement' under 18 U.S.C. § 3624(c)(2)." *United States v.*
20  *Fantz*, No. 5:14-cr-32-BR, 2020 WL 3492028, at *1 (E.D.N.C. June 26, 2020) (quoting *United*
*States v. Nash*, No. 19-40022-01-DDC, 2020 WL 1974305, at *2 (D. Kan. Apr. 24, 2020)
21  (collecting cases)); *see also United States v. Rice*, No. 12-cr-818-PJH, 2020 WL 3402274, at *4
22  (N.D. Cal. June 19, 2020) (denying a defendant's request for release to home confinement made
in conjunction with his motion for compassionate release because "the court has no authority to
23  designate the place of confinement" because the "Bureau of Prisons has the statutory authority to
choose the locations where prisoners serve their sentence."); *United States v. Gray*, No. 4:12-cr-
24  54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (holding that the CARES Act "does
not authorize the court to order defendant's placement in home confinement").  The district court
25  may only impose home detention as a condition of supervised release, rather than as part of a
sentence of imprisonment.  *See Connell*, 2020 WL 2315858, at *5 n.6 & *7.  Accordingly, to do
26  as defendant requests, the court would be required to reduce his sentence to one of time served
27  (i.e. approximately 37 months) and modify the conditions of supervised release to require home
confinement for the remainder of his 90–month sentence.  The court is unwilling to do so for the
28  reasons set forth above.

14